**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| STAN HASTINGS, on behalf of himself and all other similarly situated, | |
| *Plaintiff*, | |
| v. | Case No. 4:23-cv-202-JM |
| ASSURE MEDIA, LLC and CALLCORE MEDIA, INC., | |
| *Defendant*. | |

**DEFENDANT CALLCORE MEDIA, INC.'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S COMPLAINT**

As shown below, Plaintiff's Opposition (*see* Dkt. 21) to the Motion to Dismiss and/or Strike ("Motion"[1]) his Complaint (*see* Dkt. 1) does nothing to refute the well-supported grounds for relief presented by CallCore Media Inc. ("CallCore"). Therefore, the Motion should be granted.

## ARGUMENT

## I.     Plaintiff Fails to Plead Facts Supporting Direct or Vicarious TCPA Liability.

The Motion shows how the Complaint should be dismissed in its entirety for the threshold reason that Plaintiff fails to plead a viable theory of liability under the TCPA against CallCore—*i.e.*, direct or vicarious liability. *See* Dkt. 17 at 6-12. Plaintiff's Opposition does not show otherwise.

For starters, Plaintiff incorrectly posits the Court may not grant the Motion at all "'unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief.'" Dkt. 21 at 4-5 (quoting *Holden Farms, Inc. v. Hog Slat, Inc.,* 347 F.3d 1055, 1059 (8th Cir. 2003)). However, *Holden* predates *Twombly* and *Iqbal* and, thus, is not reflective of the current standard of review under Rule 12(b)(6), which is correctly stated in the Motion and mandates the pleading of sufficient non-conclusory facts supporting each essential element of his claim. *See* Dkt. 17 at 4 (collecting cases). *See also J.D. Fields & Co. v. Nucor-Yamato Steel*, 976 F. Supp. 2d 1051, 1058 (E.D. Ark. 2013) (noting *Twombly* and *Iqbal* abrogated the former "no set of facts" standard). As such, this Court should flatly reject Plaintiff's invitation to apply the wrong legal standard here.

Further, though he suggests in his Complaint that various third party "affiliates" or "agents" acting "on behalf" of CallCore are actually responsible for the at-issue calls (*see, e.g.,* Dkt. 1, ¶¶ 46, 63, 64, 66), Plaintiff's Opposition completely ignores CallCore's arguments and authorities on vicarious TCPA liability. *See* Dkt. 17 at 9-12. By doing so, Plaintiff has conceded this point. *See, e.g., Goodwin v. Vill. of Oakview, Mo.*, 2019 WL 1344727, at *3 (W.D. Mo. Mar. 25, 2019) (citing

---

[1] All "Motion" citations herein refer to the supporting Memorandum of Law. *See* Dkt. 17.

*Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009)) (ruling that

failure to respond to a defendant's argument for dismissal "waives an[y] argument to the contrary").

In any event, Plaintiff's counterarguments regarding direct TCPA liability fall flat. *See* Dkt.

21 at 4-8. Indeed, the Motion establishes that, to successfully plead such a claim, Plaintiff must first

allege sufficient non-conclusory facts supporting a plausible inference that ***CallCore itself—and not***

***some unidentified third party—literally took the steps necessary to physically place a call to him***

***directly***. *See* Dkt. 17 at 6-9 (collecting cases). *See also Rogers v. Assurance IQ, LLC,* 2023 WL

2646468, at *5 (W.D. Wash. Mar. 27, 2023) ("A TCPA plaintiff must allege facts to support their

belief that the defendant placed the calls at issue, such as 'how the caller identified itself, the

substance of the calls,' or other details revealing that the defendant actually took [physical] steps to

place the calls.") (quoting *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15,

2019)). Plaintiff's Opposition does not refute this well-settled point of law or offer any applicable

contrary authority.[2] At the same time, the Opposition also does not demonstrate where such factual

allegations are actually pleaded in the Complaint. That is because there are none to be found.

In fact, Plaintiff readily admits in his brief that "[t]here was no company identified in the

[alleged] pre-recorded message" for the one call that he claims to have answered. Dkt. 21 at 4.[3]

Moreover, as the Motion demonstrates, Plaintiff's Complaint does <u>not</u> allege, *inter alia*, that: (i)

CallCore owns the 501 area code phone number purportedly used to call him, (ii) CallCore's name

appeared on his Caller ID, (iii) any caller identified themselves as a CallCore employee—let alone

---

[2] At best, Plaintiff cites to *Cordoba v. DIRECTV, LLC*, *Abramson v. AP Gas & Elec. (PA), LLC,* and *Stemke v. Marc Jones Constr., LLC* which, as discussed below, are each readily distinguishable.

[3] Plaintiff argues that "[t]his failure is itself a violation of the TCPA." Dkt. 21 at 4, n.1 (citing 47 C.F.R. § 64.1200(d)(4)). However, Plaintiff does not bring a claim under that regulation in his Complaint, and it is axiomatic that he cannot amend his fatally-flawed pleading through briefing. *See, e.g., Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014) (collecting cases). Therefore, the Court should reject this clearly improper argument on its face.

even mentioned CallCore—at any point, or (iv) the supposed prerecorded message said "CallCore." *See* Dkt. 17 at 8. In short, Plaintiff's bald allegations do not support any inference that CallCore itself physically placed any calls to him directly, as is required to avoid dismissal on direct liability grounds here. *See, e.g.,* Dkt. 17 at 8 (citing *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing on this basis where the complaint lacked similar specific facts about the numbers and callers at issue) (citing, *inter alia*, *Aaronson*)). Plaintiff's Opposition gives no reason for this Court to rule any differently than the vast majority of federal courts on this front.

Instead, and at best, Plaintiff's direct liability arguments in his Opposition rest squarely on three wholly conclusory allegations he cherry picks from his pleading—namely, that: (i) "CallCore was calling individuals using pre-recorded messages"; (ii) he "was informed by SmartMatch, a client of Assure Media, that Assure Media was responsible for the call"; and (iii) "Assure Media identified CallCore as making the call at issue." Dkt. 21 at 4 (citing Dkt. 1, ¶¶ 31, 32, 40). However, not only does Plaintiff omit any factual details from his Complaint on how, when, or in what context Assure supposedly "identified" CallCore as "making the call at issue," but also the Motion demonstrates that "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call is not sufficient to allege a [direct] TCPA [liability] claim" and cannot survive dismissal in any TCPA case under Rule 12(b)(6). Dkt. 17 at 6-7 (quoting *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019)). Plaintiff's Opposition also tellingly makes no effort to reconcile the directly contradictorily—and thus inherently implausible—allegations in the Complaint indicating various unidentified third parties physically called him. *See* Dkt. 17 at 8-9 (citing *Bank* and *Hernandez*). In short, clearly all that Plaintiff is doing here is parroting the statutory language and making naked legal conclusions couched as fact—that CallCore "made" the one call he answered—which is woefully insufficient to state any claim under federal pleadings standards, let alone a plausible direct

TCPA liability claim, as the many directly on-point authorities cited above and in the Motion show.

Additionally, Plaintiff's Opposition argues there are "other consumers who [have allegedly] received similar, incessant, unsolicited telemarketing calls from the same Caller ID Number that Plaintiff alleges that CallCore [allegedly] used to contact the Plaintiff." Dkt. 17 at 21. This is the death knell to Plaintiff's attempt to state a direct TCPA liability claim against CallCore here. Indeed, Plaintiff alleges in his Complaint that: (i) all of the calls at issue (including the one that he supposedly answered) came from the same 501 area code number; and (ii) "other individuals have complained of telemarketing calls associated with that number." Dkt. 1, ¶¶ 21-22, 34. As to the latter allegation, however, Plaintiff's Complaint cites to a third party website referring to a ***different*** toll-free 844 phone number, and not the 501 number that allegedly appeared on his Caller ID. *Id.* ¶ 34 (citing https://directory.youmail.com/phone/844-495-2100 (last visited June 7, 2023)). Worse, ***none*** of the anonymous third party complaints on that website[4] even mention CallCore and, instead, suggest that the calls may have originated directly from SmartMatch. This forecloses any inference CallCore is directly liable under the TCPA for the calls at issue here. *See, e.g., Hicks v. Alarm.com Inc.,* 2020 WL 9261758, at *4-6 (E.D. Va. Aug. 6, 2020) (dismissing on direct and vicarious liability grounds where, *inter alia*, the plaintiff cited the same website in his complaint but the website's contents did not connect to the defendant and the alleged prerecorded message did not identify the defendant).

Finally, Plaintiff concludes his direct liability counterarguments by (a) mischaracterizing a handful of CallCore's authorities in summary fashion while ignoring the balance (*see* Dkt. 21 at 5-6 (citing *Sheski, Day, Smith,* and *Aaronson*)) and (b) briefly discussing three inapposite decisions (*id.* at 5, 7-8 (citing *Cordoba, Abramson* and *Stemke*)). These are unavailing for several reasons:

---

[4] As it is cited in the Complaint, the Court may properly consider this website under Rule 12(b)(6). *See, e.g., Kushner v. Beverly Enter.,* Inc., 317 F.3d 820, 831 (8th Cir. 2003).

**First**, Plaintiff posits that "the cases cited by CallCore included cases where the plaintiffs were plainly alleging vicarious or alternative theories of liability other than the direct liability alleged here." Dkt. 21 at 5. Not so. Plainly, <u>all</u> of the authorities in the Motion are directly on-point—indeed, in the vast majority of them, the plaintiffs expressly asserted ***direct <u>and</u> vicarious*** TCPA liability theories in the same conclusory fashion as Plaintiff did. Moreover, each decision CallCore cited shows that just baldly alleging a defendant somehow "made" a call—which is all Plaintiff's Complaint does here, at best—does not lead to an inference that the defendant itself "physically" placed that call standing alone and, thus, is not enough to plausibly allege direct TCPA liability. This Court should follow the weight of applicable authority cited in the Motion on this point, and dismiss.

**Second**, Plaintiff's reliance on *Cordoba* is misplaced because, *inter alia*: (1) it is a class certification decision; (2) is only used to support an argument that "Plaintiff's injury from the [alleged] calls is traceable to CallCore," which is an Article III standing issue that is not raised in the Motion; and (3) does not discuss or apply the standards for pleading direct or vicarious TCPA liability under Rule 12(b)(6), which is different than the Article III standing "traceability" standard under Rule 12(b)(1) where a mere ***indirect*** connection between the defendant and an alleged caller may be enough to avoid dismissal. *See, e.g., Bank v. GoHealth, LLC,* 2021 WL 2323282, at *6–12 (E.D.N.Y. Mar. 8, 2021), *report and rec. adopted,* 2021 WL 1884671 (May 11, 2021) (finding a call was indirectly "traceable" to defendant for Article III standing purposes but dismissing for failure to state a direct or vicarious liability claim under Rule 12(b)(6)). *See also Kaufman v. Dreyfus Fund, Inc.,* 434 F. 2d 727, 733 (3d Cir. 1970) (courts "must not confuse requirements necessary to state a cause of action [under 12(b)(6)] with the prerequisites of [Article III] standing" under 12(b)(1)). Therefore, the Court should once again reject Plaintiff's invitation to apply an incorrect legal standard for determining CallCore's direct TCPA liability here. *See also In re Rules and Regs.*

*Implementing the TCPA*, 30 FCC Rcd. 7961, 7980 (Jul. 10, 2015) (there must be a "**direct connection** between a person or entity and the making of a call" for direct TCPA liability) (emphasis added).

      **Third**, Plaintiff's heavy reliance on *Stemke* is equally misplaced. Among other things, the plaintiff there expressly alleged in her complaint that her attorneys somehow "confirmed" that one of the phone numbers used by one of the callers to call her "belong[ed]" to the defendant; consequently, the court ruled that "[t]o the extent [the defendant] disputes that it directly placed the calls, [the defendant] may take discovery on this matter and argue the issue [again] at the [summary judgment] stage." 2021 WL 4340424, at *2–3 (M.D. Fla. Sept. 23, 2021). Here, Plaintiff does <u>not</u> make any such allegation in his Complaint, not even in the same conclusory fashion as in *Stemke*. In fact, Plaintiff does <u>nothing</u> to tie the phone number purportedly used to call him to CallCore, does not allege he called that number back and reached CallCore, and pleads directly contradictory allegations suggesting that third parties may have physically called him, as discussed above. Further, *Stemke* stands in stark contrast to the many directly on-point authorities cited in the Motion and above—which Plaintiff's Opposition mostly ignores—all holding that merely concluding a call was "made" by the defendant or originated from a number "belonging" to the defendant is insufficient, standing alone, to plausibly allege direct TCPA liability at the pleadings stage or to avoid dismissal under Rule 12(b)(6). *See also Hurley v. Messer,* 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (dismissing a TCPA case in part on this basis, holding that "allowing discovery where Plaintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"). In short, *Stemke* is an outlier decision contrary to well-settled law, and thus should not be followed.

      **Fourth**, *Abramson* is likewise easily distinguishable and merely another outlier opinion. There, the court found relevant that the plaintiff was transferred by the unidentified caller to someone who purportedly "'told the [p]laintiff that he was calling to sign individuals up for AP Gas's [*sic*]

services'" as well as allegedly "provided an AP Gas telephone number, directed [the plaintiff] to call the number for a verification number, stayed on the line during the verification process, and then returned on the line." 2023 WL 1782728, at *3 (W.D. Pa. Feb. 6, 2023). Again, Plaintiff alleges no such facts here. Moreover, the *Abramson* court did not discuss the standard for pleading <u>vicarious</u> TCPA liability, which has much different requirements than direct liability as the Motion shows (*see* Dkt. 17 at 9-12), and yet it still concluded that the foregoing allegations were "sufficient to establish a direct *or otherwise authorized connection* to AP Gas." *Id*. (emphasis added). Further, other <u>direct</u> courts in the same Circuit as the *Abramson* court and elsewhere have correctly recognized that an unidentified caller *transferring* a call to the defendant is <u>not</u> the equivalent of the defendant itself physically placing that call (rather, it is the *defendant who is receiving* the call in this scenario) and, therefore, is not enough to plausibly allege direct <u>or</u> vicarious TCPA liability, either. *See, e.g., Landy v. Nat. Power Sources, LLC*, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023). Thus, *Abramson* is not only another outlier decision but also (respectfully) was wrongly-decided and, as such, should also be rejected.

In sum, because Plaintiff has not plausibly alleged CallCore's direct liability under the TCPA and conceded vicarious liability, his Complaint should be dismissed in its entirety on these grounds alone, in accordance with the weight of applicable authority. *See* Dkt. 17 at 12 (citing *Gulden*).

## II.      <u>Plaintiff Fails to Plead Facts Supporting Use of a "Prerecorded Voice" to Call Him.</u>

Again, Plaintiff's own arguments and pled allegations belie his attempt to allege that a "prerecorded voice" (another essential element of his TCPA claim) was used here. As noted above (*see* p. 3, *supra*), Plaintiff's Complaint and Opposition cite to and rely heavily on anonymous third party complaints posted on a third party website.[5] Yet, not only do those complaints fail to connect

---

[5] *See* https://directory.youmail.com/phone/844-495-2100 (last visited June 7, 2023).

the calls at issue here to CallCore, but also none of the calls discussed on that website are similar in content to the one Plaintiff vaguely describes in his Complaint (or even to each other) and further suggest the calls were made by a live person ("Nicholas with Smart Match"). This further warrants dismissal. *See, e.g., Hicks,* 2020 WL 9261758, at *5 (rejecting argument that the call at issue was prerecorded where the same "website d[id] not mention [the defendant] and the other recordings on that website [were] not identical as a group or to the one [p]laintiff provide[d]" in his complaint).

Plaintiff's cited authorities in support of his "prerecorded voice" claim are readily distinguishable and inapposite. For example, Plaintiff begins by citing to *Rahn v. Bank of Am., N.A.* (s*ee* Dkt. 21 at 8-9), which stands in contrast to the majority of applicable federal case law cited in the Motion and further below on this point; and that court did not cite to any applicable authority for its holding on prerecorded voice use in any event. 2016 WL 7325657, at *4 (N.D. Ga. June 24, 2016). Plaintiff also cites to, but does not analyze, *Evans v. Nat'l Auto Div., L.L.C.* (s*ee* Dkt. 21 at 9), but whether the calls there were prerecorded was <u>not</u> at issue. Instead, the *Evans* court found persuasive the "unnatural period of silence after Plaintiff answered the call" as indicative of use of an "automatic telephone dialing system" (or "ATDS" or "autodialer"), which is not a claim Plaintiff alleges against CallCore in the present case. *See* 2016 WL 885050, at *2 (D.N.J. Mar. 8, 2016).

Plaintiff next relies on *Neptune v. Whetstone Partners, LLC* (s*ee* Dkt. 21 at 9), but that court did not distinguish between an autodialer or a prerecorded voice claim. Plus, the facts that court found suggestive of the use of one of those technologies was the ***volume*** of calls, that ***the content was the same*** for each, ***how often*** they occurred *on **the same day***, and ***plaintiff's demands the calls stop*** went unheeded. *See* 34 F. Supp. 3d 1247, 1250 (S.D. Fla. 2014) (alleging ***45 calls*** containing messages "reminding Plaintiff that his payment was due"). Those are not the facts in this case either. Here, Plaintiff alleges a "dozen" calls occurring over an unspecified time period, only <u>**one**</u> of which

he answered, admits he played along with the caller rather than ask for the calls to stop, and does not claim he received any additional calls after speaking with a live person. *See* Dkt. 1, ¶¶ 21-29.

Plaintiff cites *Sojka v. DirectBuy, Inc.* (*see* Dkt. 21 at 9), but that case was about voicemails so there was no opportunity to test whether the caller was live or a recording. Further, the voicemails at issue themselves also allegedly conceded they were recordings by prompting the call recipient to "press 1 to speak to a live operator." 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014) (describing the content of five voicemails containing "generic statements that were repeated verbatim"). The same is true for *Abramson*, where the plaintiff allegedly was prompted to "press one" to be connected to an operator. *See* 2023 WL 1782728, at *3 (W.D. Pa. Feb. 6, 2023). These facts are not alleged here.

Plaintiff further relies on *Greene v. Select Funding LLC* (*see* Dkt. 21 at 9), where the plaintiff alleged in his complaint that he knew the call at issue was prerecorded based, *inter alia*, on "the speaker's 'content, tone and inflection'" and "cadence." 2021 WL 4926495, at *4 (C.D. Cal. Feb. 5, 2021). Again, Plaintiff's Complaint in this case lacks any such factual details about the speaker's tone of voice or cadence from the one call that he allegedly answered that would support a plausible inference that it was a recording that was played as opposed to a live person speaking. *See also Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing in part on this basis under Rule 12(b)(6) where the plaintiff did not allege that "the voice in the message sounded artificial, nor d[id] he allege having received multiple messages that sounded identical").

Lastly, Plaintiff summarily addresses, but does not analyze (much less sufficiently distinguish), CallCore's directly on-point cited authorities on this front. *See* Dkt. 21 at 10-11. As is apparent, however, each of those cases stands for the proposition that merely concluding a call involved a "prerecorded voice" without describing—at least in laymen's terms—***how the "voice" actually sounded*** is insufficient to avoid dismissal of such a TCPA claim on this basis. *See, e.g.,*

Dkt. 17 at 13 (citing *Manopla v. Sansone Jr.'s 66 Automall*, 2020 WL 1975834, at *2 (D.N.J. Jan.

10, 2020) (dismissing where, as here, the complaint was "bereft of any allegations regarding the

tenor, nature, or circumstances of the alleged calls" and the plaintiff "merely proffer[ed] the content

of the message and conclusory allege[d] that [d]efendant utilized a pre-recorded message")). Plaintiff

plainly did not do so here, instead merely repeats the statutory language, and concludes that the voice

he heard was "prerecorded" without any supporting facts demonstrating how he arrived at that

conclusion. *See* Dkt. 17 at 13. That Plaintiff purportedly asked the caller "are you a real person?"

and alleges that "another recorded message was played" in response (Dkt. 1, ¶¶ 26-28) is merely

another way of regurgitating the statute. Yet, he does <u>not</u> allege, for example, how the voice sounded

at all or that he received multiple calls on the same day with the same message. And it is just as

plausible the caller responded with "yes" or gave some other indication it was a live call—especially

given Plaintiff does not allege the substance of the response that he received to his question.[6]

Thus, in sum, as Plaintiff failed to plead sufficient actual facts supporting this essential

element of his TCPA claim, his Complaint should be entirely dismissed on this additional basis.

### III.   <u>Plaintiff Fails to Plead Facts Supporting a "Knowing" or "Willful" TCPA Violation.</u>

Plaintiff argues that he has sufficiently alleges a "willful" or "knowing" TCPA violation,

justifying his request for treble damages, because CallCore "has previously been sued for a violation

of the TCPA but continued with the pre-recorded calling conduct anyway." Dkt. 21 at 15. However,

what Plaintiff's Complaint actually alleges (albeit in a wholly conclusory fashion) is that ***Assure***

***Media***—not CallCore—has been previously sued for alleged TCPA violations. *See* Dkt. 1, ¶ 43.

---

[6] Plaintiff's Opposition argues "the actual pre-recorded message used is included in the [C]omplaint" (Dkt. 21 at 10), which is a gross mischaracterization. At most, what his Complaint actually alleges is that (a) "[t]he call advertised the ability to reduce the costs of deductibles, copays and prescription drugs" and (b) "[t]he pre-recorded message stated that the purpose of the call was to reduce costs that 'seniors experience'." Dkt. 1, ¶¶ 26, 30. These excerpts provide no contextual details from which the Court could reasonably infer that Plaintiff truly heard a prerecorded voice.

Again, Plaintiff cannot amend his pleading through briefing. *See Thomas, supra.*

Moreover, Plaintiff not only ignores CallCore's cited authority on this front (*see* Dkt. 17 at 14, n.7 (citing *Sterling*)), but also his syllogism is seemingly that a prior unadjudicated lawsuit against Assure Media is enough to establish willfulness ***as to any other claim*** at the pleadings stage. However, that theory has been rejected even on much more developed records. *See, e.g., Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 425 (E.D.N.Y. 2013) (holding that prior alleged TCPA violations ***as to third parties*** do not show willfulness ***as to the plaintiff***).

In all, it is well settled that conclusory allegations of willful or knowing TCPA violations, like Plaintiff's, "are legal in nature, 'and as such need not be accepted as true' at this stage of the pleadings." *Lenhardt v. Democratic Nat'l Comm.,* 2022 WL 110814, at *5 (D. Kan. Jan. 12, 2022) (quoting *Castro v. Cap. One Servs., LLC,* 2017 WL 4776973, at *5 (M.D. Fla. Aug. 3, 2017)). That is all Plaintiff's Complaint offers here, in a single speculative paragraph. *See, e.g.,* Dkt. 1, ¶ 65. That does not comply with federal pleadings standards, and those allegations should be dismissed.

## IV.     Plaintiff Lacks Article III Standing to Seek Injunctive Relief.

As CallCore has demonstrated, Plaintiff does not allege any facts suggesting an ongoing or possible future injury to him (*i.e.,* he will receive calls in the future from or on behalf of CallCore) in his Complaint and, thus, lacks Article III to seek injunctive relief. *See* Dkt. 17 at 4, 14 (citing *Elder, O'Shea, Steel Co., Miller* and *Schaevitz*). In his Opposition, Plaintiff suggests he need only allege a statutory violation, and that is all that is required for standing to seek injunctive relief under the TCPA, and cites non-binding out-of-circuit authorities in support. *See* Dkt 21 at 13-14 (citing *Campbell*, *In re Yahoo, Guiterrez,* and *Abramson*). Plaintiff is wrong, and his cases are inapposite.

Indeed, Plaintiff relies heavily on *Gutierrez*, where the defendant apparently did not challenge whether there were sufficient facts alleged suggesting a possible future injury, as

CallCore's Motion argues here. *See Gutierrez v. Fla. Advert. & Mktg. Corp.*, 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019).[7] In *Campbell* and *In re Yahoo*, the plaintiffs alleged that there was an <u>ongoing</u> injury. *See* 951 F.3d 1106, 1120 (9th Cir. 2020) and 308 F.R.D. 577, 589 (N.D. Cal. 2015). And the *Abramson* court seemingly conflated the "zone of interests" standard for prudential (a.k.a. "statutory") standing with the constitutional standard for Article III standing;[8] and, in any event, the plaintiff there did not allege an ongoing or possible future risk of injury. *See* 2023 WL 1782728, at *4–5. All told, these cases do not refute the authorities cited in the Motion showing that a plaintiff lacks Article III standing to pursue injunctive relief where, as here, he has failed to allege any threat of future injury. Moreover, Plaintiff's argument and authorities are contrary to black letter law in the Eighth Circuit, where even "[a]llegations of ***possible*** future injury do not satisfy the requirements of Article III" standing alone and, instead, "[a] threatened injury must be ***certainly impending*** to constitute injury in fact." *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 997 (8th Cir. 2022) (citing *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990)) (emphasis added). Plaintiff pleads nothing suggesting any risk of future injury or one that is "certainly impending" as required. Thus, Plaintiff lacks standing to seek, and the Court lacks subject matter jurisdiction to award, injunctive relief.

## V.     <u>Plaintiff's Uncertifiable Class and Other Improper Allegations Should Be Stricken.</u>

Ignoring the vast majority of the authorities cited in support of CallCore's alternative motion to strike his facially-uncertifiable class and other improper allegations, Plaintiff suggests that it

---

[7] Plaintiff and the judge in *Guiterrez* both ignore the *Schaevitz v. Braman Hyundai, Inc.* case cited in CallCore's Motion (*see* Dkt. 17 at 14), where a different district court in the Southern District of Florida held that "[t]he binding precedent in th[e] [Eleventh] [C]ircuit is clear that for an injury to suffice for prospective relief, it must be imminent" and dismissed a TCPA plaintiff's request for injunctive relief where there was no alleged threat of future injury, without making any arbitrary distinction between "statutory" and "non-statutory" violations, like Plaintiff tries to draw here. 437 F. Supp. 3d 1237, 1251 (S.D. Fla. 2019) (quoting *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006)). Thus, *Guiterrez* is not even representative of settled Eleventh Circuit law in any event.

[8] The Supreme Court has recognized that prudential/statutory and constitutional standing are distinct legal concepts. *See Kowalski v. Tesmer*, 543 U.S. 125, 129-130 (2004).

would premature for this Court to rule on the sufficiency of his class allegations prior to discovery. *See* Dkt. 21 at 15-17. Of course, this argument ignores that myriad courts have routinely stricken deficient class allegations at the pleadings stage, in TCPA and other cases. *See* Dkt. 17 at 14-18. Indeed, as CallCore previously noted, "[t]he Eighth Circuit recently reaffirmed that district courts may (and, indeed, ***should*** in appropriate cases) strike faulty class allegations at the pleadings stage under Rule 12(f) where, as here, it is apparent from the face of the complaint that the proposed classes are not certifiable under Rule 23 as pleaded." *Id*. at 5 (citing *Donelson*) (emphasis in original). That Plaintiff's Opposition ignores *Donelson* is quite telling, and any notion that this Court may not properly decide this issue now at this stage prior to discovery simply falls flat.

Beyond this, the Complaint is devoid of any allegations suggesting class-wide proof of liability is possible here. Indeed, Plaintiff seeks to represent a class of persons whom CallCore (or an "agent" on its "behalf") purportedly called "using an identical or substantially similar prerecorded message." Dkt. 1, ¶ 46. As demonstrated in the Motion and above, however, Plaintiff fails to plausibly allege (beyond his bald conclusions based on hearsay from Assure and reference to anonymous third party complaints that do not identify CallCore) any unlawful conduct attributable to CallCore, much less common conduct applicable to the putative class—*i.e.*, that anyone other than Plaintiff received an identical or substantially similar "prerecorded" call from CallCore or an agent acting on behalf of CallCore. Thus, a determination of whether a person is a member of the alleged class and whether there could be any direct or vicarious liability on the part of CallCore (or even whether the call was "substantially similar" to the one Plaintiff allegedly received) would <u>necessarily</u> require individualized factual and legal inquiries. *See* Dkt. 17 at 17 (citing *Powell*). Accordingly, Plaintiff's facially-defective class definition should be stricken on this basis alone. *See, e.g., Barabin v. Aramark Corp.,* 210 F.R.D. 152, 161–62 (E.D. Pa. 2002), *aff'd*, 2003 WL 355417 (3d Cir. Jan. 24,

2003) (granting motion to strike class allegations based on the allegations in complaint where "the circumstances under which [the alleged wrongful] acts … were committed and the resultant injuries are unique to each individual plaintiff" and "[t]he plaintiffs' individual claims for damages would therefore require individualized evaluations and findings of the facts and defenses").

Further, Plaintiff's proposed class definition is impermissibly overbroad because, on its face, it includes many individuals who suffered no injury and for whom there could be no claim against CallCore as a matter of law. *See* Dkt. 17 at 15-16. Plaintiff concludes that the class is not overbroad because "there has been no showing that CallCore made any calls with consent." Dkt. 21 at 17. However, if "all of the proposed class members received only unsolicited [calls], the class definition should say so." *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018) (finding class definition was overbroad where it did not exclude those who solicited the fax at issue and therefore "ha[d] no TCPA claim against Defendants").

Courts have denied class certification in TCPA cases where, as here, the class does not exclude those who provided consent and therefore for whom there could be no viable claim against the defendant. *See, e.g., Warnick v. DISH Network LLC*, 304 F.R.D. 303, 306 (D. Colo. 2014) (finding class was overbroad because those who consented could not be class members); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 108 (N.D. Ill. 2013) (finding proposed class definition overbroad where it would "include thousands of individuals who consented to receiving calls on their cellphones and thus have no grievance under the TCPA"); *A Custom Heating & Air Conditioning, Inc.*, 2018 WL 488257, at *4 (ruling similarly); *Licari Family Chiropractic v. eClinical Works, LLC*, 2019 WL 7423551, at *3–5 (M.D. Fla. Feb. 16, 2018) (ruling similarly).

Indeed, permitting a facially overbroad class definition to proceed would be inherently prejudicial to CallCore. "Given the 'in terrorem character of a class action,' [ ] a class defined so as

14

to improperly include uninjured class members increases the potential liability for the defendant and induces more pressure to settle the case, regardless of the merits." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019) (citation omitted). Thus, there is good reason to strike Plaintiff's overbroad class definition prior to discovery and prior to Plaintiff moving for class certification, too.

Lastly, Plaintiff tellingly ignores the *Hicks* case cited in the Motion, where a court struck "superfluous historical" allegations about anonymous internet complaints in a TCPA case, like Plaintiff's, under Rule 12(f). *See* Dkt. 17 at 18-19. Plaintiff makes no effort to connect those complaints to any conduct by CallCore, let alone show how they are material to his claim. Those improper allegations, having nothing to do with his claims against CallCore, should be stricken too.

## <u>CONCLUSION</u>

For all the reasons in the Motion and above, Plaintiff's Complaint should be dismissed in its entirety under Rule 12(b)(6) and/or 12(b)(1), or alternatively his facially improper class and other allegations should be stricken from the Complaint under Rule 12(f) and/or 23.

Dated: June 7, 2023

Respectfully submitted,

By: /s/ Emily A. Neal
Emily A. Neal, Ark. Bar No. 2003087
Conner Eldridge, Ark. Bar No. 2003155
**ELDRIDGE BROOKS, PLLC**
5100 West JB Hunt Drive, Ste. 840
Rogers, AR 72758
(479) 553-7678 - Telephone
emily@eldridgebrooks.com
conner@eldridgebrooks.com

John W. McGuinness (*pro hac* forthcoming)
A. Paul Heeringa, (pro hac forthcoming)
**MANATT, PHELPS & PHILLIPS, LLP**
151 North Franklin Street, Ste. 2600
Chicago, IL 60606
(312) 529-6308 - Telephone
jmcguinness@manatt.com
pheeringa@manatt.com
***Attorneys for CallCore Media, Inc.***

15

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically on the Court's CM/ECF docket on June 7, 2023, which served same electronically upon all counsel of record.


<u>/s/ Emily A. Neal</u>